**SO ORDERED,**



*Judge Jason D. Woodard*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| NICOLE A. COLE, | ) | Case No.:   23-12890-JDW |
| | ) | |
| Debtor. | ) | Chapter 13 |

## MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS (Dkt. # 88)

This matter came before the Court on the *Objection to Debtor's Claim of Exemptions*[1] filed by the chapter 13 trustee and the debtor's *Response to Objection to Claim of Exemptions*.[2] A hearing was held on December 10, 2024, where counsel for the trustee and counsel for the debtor appeared and presented argument. No evidence was admitted, although the parties referred to pleading exhibits. The question is whether the state law garnishment cap

---

[1] (Dkt. # 88).
[2] (Dkt. # 91).

1

found in Miss. Code Ann. § 85-3-4 exempts litigation settlement proceeds in a bankruptcy case not involving a garnishment. The settlement proceeds derive from the debtor's lawsuit against her former employer for wrongful termination and lost wages. If exempt, the debtor may retain the settlement proceeds. If not exempt, the trustee may distribute the money to creditors.

The Court has considered the arguments, pleadings, and relevant law, and finds that the exemption statute is inapplicable, and the trustee's objection is due to be sustained. The settlement proceeds are non-exempt property of the bankruptcy estate that are available for distribution to creditors.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a), and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) and (B).

## II. FINDINGS OF FACT[3]

The facts are brief and undisputed. The debtor filed her voluntary chapter 13 petition on September 18, 2023.[4] Her chapter 13 plan was confirmed on January 24, 2024, providing for no payment to nonpriority

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[4] (Dkt. # 1).

2

unsecured claims.[5] The debtor later filed an application to employ special counsel to represent her in postpetition employment-related claims against her former employer, which was approved on June 7, 2024.[6] She then filed an application to approve a settlement of that case, whereby the debtor would receive $15,000 "for back wages" in full and complete settlement of her claims.[7] On September 16, 2024, the Court entered an agreed order approving the settlement.[8] That agreed order provided that the settlement proceeds would be paid to the trustee to be disbursed at a later date "pursuant to further order of this Court," essentially preserving the issue that is before the Court now.[9]

On October 2, 2024, the debtor amended her Schedule C to claim the settlement proceeds as exempt pursuant to Miss. Code Ann. § 85-3-4.[10] Her novel theory is that the settlement proceeds for back wages[11] are exempt because the Mississippi garnishment statute provides that wages are exempt from seizure or garnishment for a period of thirty days, after which certain percentages of those wages are protected.[12] Of the thousands of chapter 13

---

[5] (Dkt. # 34).
[6] (Dkt. ## 40, 47).
[7] (Dkt. # 69). The settlement agreement was attached to the application but was not admitted into evidence at the hearing. It was referenced by counsel and the trustee took no issue with the categorization of the settlement proceeds as back wages.
[8] (Dkt. # 82).
[9] *Id.*
[10] (Dkt. # 87).
[11] The Court makes no finding here that the settlement proceeds are all wages because the Court finds that the statute is inapplicable even if the proceeds are wages.
[12] The debtor offered no case law in support of this theory in her pleadings or at the hearing.

cases filed in Mississippi each year, this is the first time the Court is aware of this theory being advanced. The trustee objected to the exemption, arguing that the "cited statute is inapplicable to the property in which the Debtor has claimed an exemption."[13]

### III. CONCLUSIONS OF LAW

When a debtor files a bankruptcy petition, generally all of the debtor's assets become property of the bankruptcy estate.[14] But the debtor may claim certain statutorily enumerated property as exempt, thereby excluding it from property of the estate.[15] "A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemption of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case."[16] For example, a debtor may claim an exemption for a homestead, "to provide debtors with the basic necessity of a home."[17] Likewise, tools of the trade are often exempt to "enable a debtor to continue in his trade"[18] and "prevent his becoming 'a public

---

[13] (Dkt. # 88).
[14] 11 U.S.C. § 541 (bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case.").
[15] 11 U.S.C. § 522; *Schwab v. Reilly*, 560 U.S. 770, 774 (2010).
[16] *In re Urban*, 361 B.R. 910, 913 (Bankr. D. Mont. 2007) (quoting 4 Collier on Bankruptcy, ¶ 522.01, p. 522–15 (15th ed. rev.)).
[17] *In re Stoner*, 487 B.R. 410, 420 (Bankr. D. N.J. 2013). *See also In re Anderson*, 240 B.R. 254, 256 (Bankr. W.D. Tex. 1999).
[18] *In re Aurelio*, 252 B.R. 102, 107 (Bankr. N.D. Miss. 2000) (citing *In the Matter of Patterson*, 825 F.2d 1140, 1144 (7th Cir.1987)); *See, e.g.*, MISS. CODE ANN. § 85-3-1(a)(iii).

4

charge.'"[19] Exempt property is retained by the debtor and is not available for payment to creditors.[20]

Exemptions "effectuate a careful balance between the interests of creditors and debtors."[21] As the Supreme Court has noted, "every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to ... creditors. On the other hand, exemptions serve the important purpose of 'protect[ing] the debtor's essential needs.'"[22]

> When Congress enacted § 522(b) permitting debtors in bankruptcy to utilize property exemptions granted under state law as alternatives to the federal exemptions listed in § 522(d), Congress had in mind the type of exemptions where property is *completely and permanently* exempt thereby preventing creditors from *ever* threatening the exempt property with attachment, seizure and execution. In other words, the essence and purpose of a bankruptcy exemption is the sequestration of particular types of a debtor's property by placing the exempt property *completely beyond the reach of creditors for as long as the property maintains its exempt character and form.*[23]

Section 522(d) of the Bankruptcy Code[24] lists categories of property that a debtor may claim as exempt (known as the "federal exemptions"), but section 522(b) further provides that states may prohibit their citizens from choosing

---

[19] *In re Neal*, 140 B.R. 634, 636 (Bankr. W.D. Tex. 1992) (quoting *In re Taylor*, 861 F.2d 550, 552 (9th Cir.1988)).
[20] *See Owen v. Owen*, 500 U.S. 305, 308 (1991).
[21] *Clark v. Rameker*, 573 U.S. 122, 129 (2014).
[22] *Id.* (quoting *Schwab*, 560 U.S. at 791; *See also United States v. Security Industrial Bank*, 459 U.S. 70 (1982) (Blackmun, J., concurring in judgment)).
[23] *In re Lawrence*, 219 B.R. 786, 792 (E.D. Tenn. 1998) (emphasis added).
[24] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532. Unless otherwise noted, all statutory references herein are to the Bankruptcy Code.

the federal exemptions and instead require the use of state law exemptions (referred to as "opting out"). The debtor here is domiciled in Mississippi, which, like many states, has opted out.[25] Accordingly, she is limited to the exemptions provided under Mississippi state law.

The debtor claimed an exemption in the settlement proceeds under Miss. Code Ann. § 85-3-4, which provides, in part, that "(1) [t]he wages, salaries or other compensation of laborers or employees, residents of this state, shall be exempt from seizure under attachment, execution or garnishment for a period of thirty (30) days from the date of service of any writ of attachment, execution or garnishment." As the objecting party, the trustee bears the burden of proving that the exemption is not properly claimed.[26]

While exemptions are to be liberally construed in favor of the debtor, a court may not depart from statutory language or "'extend the legislative grant,' even under the guise of liberal construction of the exemption."[27] The Court analyzes Miss. Code Ann. § 85-3-4, under which the debtor claims her exemption, within the context of section 522. The Court concludes that the debtor is not entitled to an exemption under Miss. Code Ann. § 85-3-4 because the plain language of the statute makes clear that it is inapplicable here.

---

[25] MISS. CODE ANN. §§ 85-3-2.
[26] Fed. R. Bankr. P. 4003.
[27] *In re Pace*, 521 B.R. 124, 127 (Bankr. N.D. Miss. 2014) (quoting *In re Lenox*, 58 B.R. 104, 106 (Bankr. D. Nev. 1986)).

Further, allowing the exemption would conflict with federal bankruptcy policy, which provides its own mechanism to ensure a debtor can maintain a basic standard of living.

### A. The plain language of Miss. Code Ann. § 85-3-4 makes clear it is not applicable here.

"Courts are required to interpret and enforce statutes according to the plain meaning of their language as long as the language is unambiguous … If the language of a statute is unambiguous and susceptible of only one objectively reasonable interpretation, absent a clearly expressed legislative intent to the contrary, the plain language is ordinarily conclusive."[28] Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"[29] "When interpreting a statute, courts look not merely to a particular clause in which general words may be used, but will also consider the statute as a whole and the object and policy of the law, as indicated by its various provisions."[30] Courts "construe statutes so as to carry into execution the intent and will of the legislature."[31]

---

[28] *In re Lawrence*, 219 B.R. 786, 791 (E.D. Tenn. 1998) (citing *Toibb v. Radloff*, 501 U.S. 157, (1991); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, (1989); *In re Toti*, 24 F.3d 806, 809 (6th Cir.), cert. denied, 513 U.S. 987 (1994); *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993); *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993)).
[29] *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).
[30] *Lawrence*, 219 B.R. at 791 (quoting *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)).
[31] *Kokoszka*, 417 U.S. at 650.

7

The debtor has claimed an exemption in the litigation settlement proceeds/back wages under Miss. Code Ann. § 85-3-4, which essentially establishes the process by which a judgment debtor's earnings may be garnished by a judgment creditor. First, it provides that "(1) [t]he wages, salaries or other compensation of laborers or employees, residents of this state, shall be exempt from seizure under attachment, execution or garnishment for a period of thirty (30) days from the date of service of any writ of attachment, execution or garnishment."[32] After the passage of the thirty-day period, it limits the amount to which the "aggregate disposable earnings … of an individual" may be "levied by attachment, execution or garnishment" as follows:

> (a) In the case of earnings for any workweek, the lesser amount of either,
>
> > (i) Twenty-five percent (25%) of his disposable earnings for that week, or
> >
> > (ii) The amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage (prescribed by section 206 (a)(1) of Title 29, United States Code Annotated) in effect at the time the earnings are payable; or
>
> (b) In the case of earnings for any period other than a week, the amount by which his disposable earnings exceed the following "multiple" of the federal minimum hourly wage which is equivalent in effect to that set forth in paragraph (a)(ii) of this subsection (2): The number of workweeks, or

---

[32] MISS. CODE ANN. § 85-3-4(1).

fractions thereof multiplied by thirty (30) multiplied by the applicable federal minimum wage.[33]

Most importantly, the statute applies to wages subject to any writ of attachment, execution or garnishment. There is no such writ here–no attachment, no execution, and no garnishment. Even setting aside that the money may be considered settlement proceeds rather than true wages,[34] the statute is simply inapplicable.

Further, the statute does not identify property that a debtor may keep from creditors completely and permanently. A plain reading of Miss. Code Ann. § 85-3-4 makes clear that it is a weekly wage garnishment "cap," not an exemption. The statute simply delineates the timing and percentage of funds subject to the garnishment until the debt is paid in full.

Finally, the Mississippi legislature explicitly excluded the wages described in Miss. Code Ann. § 85-3-4 from the general exemptions it chose to provide debtors in Miss. Code Ann. § 85-3-1.[35] The direct language makes clear that the exclusion was purposeful, especially in light of the legislature's proven ability to permanently exempt certain property under other Mississippi statutes. For example, Miss. Code Ann. § 85-3-1 provides an exemption up to

---

[33] MISS. CODE ANN. § 85-3-4(2).
[34] Settlement proceeds are not exempt under Mississippi law. *Marshall v. Pongetti*, 332 B.R. 284, 285 (N.D. Miss. 2005) (reviewing MISS. CODE ANN. § 85–3–17).
[35] MISS. CODE ANN. § 85-3-1(a) ("This paragraph (a) shall not apply to … wages described in Section 85-3-4").

$10,000 in value for tangible personal property.[36] No portion of the exempt property becomes subject to collection after a certain period. The exemption remains in perpetuity. The same goes for the limited homestead exemption.[37] Those exemptions are not limited by time and the exempt property is never subject to a debtor's liability, unless it changes its character.[38] Comparatively, the Mississippi legislature chose to cap garnishment withdrawals in each paycheck, but creditors can reach a portion of the wages over and over until the debt is paid in full.

In *Kokoszka v. Belford*, the Supreme Court of the United States addressed a debtor's argument that a similar wage garnishment cap found in the Federal Consumer Credit Protection Act (the "FCCPA") provided an exemption in wages that could be claimed in bankruptcy.[39] The Supreme Court analyzed the garnishment restriction provision in 15 U.S.C.A. § 1673, which provides:

> Except as provided in subsection (b) and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

---

[36] In a prior opinion, the United States District Court for the Northern District of Mississippi held that wages wrongfully withheld by garnishment on an expired judgment were not tangible personal property subject to exemption. *Haynes v. First United Bank of Mississippi*, 133 B.R. 783 (N.D. Miss. 1991).
[37] MISS. CODE ANN. § 85-3-21.
[38] *Cf. In re Fernandes*, 605 B.R. 733 (Bankr. N.D. Miss. 2019) (exempt income tax refunds paid to debtors prepetition and direct-deposited into a commingled checking account lost exempt character over time).
[39] 417 U.S. at 643.

> (1) 25 per centum of his disposable earnings for that week, or
>
> (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less.

The Supreme Court held that the FCCPA does not restrict the right of a bankruptcy trustee to treat an income tax refund as nonexempt property of the bankruptcy estate. The *Kokoszka* Court contrasted the policy of the garnishment cap with the purpose of bankruptcy relief, explaining:

> An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. *See, e.g., Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Indeed, Congress' concern was *not the administration of a bankrupt's estate* but the *prevention of bankruptcy in the first place* by eliminating 'an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption' and a consequent increase in personal bankruptcies.[40]

The Court continued: "if, despite [the FCCPA's] protection, bankruptcy did occur, the debtor's protection and remedy *remained under the Bankruptcy Act*."[41]

---

[40] *Id.* at 650 (citing H.R.Rep.No.1040, 90th Cong., 1st Sess., 21 (1967) (emphasis added) ("The limitations on the garnishment of wages adopted by your committee, while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families.")).
[41] *Id.* at 651 (emphasis added).

11

Extrapolating the Supreme Court's analysis in *Kokoszka*, numerous other courts have "held that similar wage garnishment exemption statutes do not create a general exemption in bankruptcy cases."[42] Those courts "emphasize the differing purposes behind wage garnishment limitations and exemptions from attachment and execution, and they point to legislative ability to draft specific statutory language."[43]

For example, in *In re Thum*, an Illinois bankruptcy court compared the various general exemptions provided by its state statutes to its "statute that sets a ceiling on the amount of a judgment debtor's wages" to determine whether "the nongarnishable portion of accrued wages [was] 'completely beyond the reach of creditors' and 'free from liability for the satisfaction of debts.'"[44] The *Thum* court noted that various Illinois exemption statutes, including the general personal property exemption statute, the provision exempting certain retirement plans, the provision making certain life insurance proceeds exempt, and the homestead exemption law, among others, all broadly state that the property is exempt from judgment, attachment, execution or distress from rent without exception or limitation. The court summarized that "the Legislature has a demonstrable pattern, when creating an exemption, of using language that unequivocally protects the identified

---

[42] *Matter of Longnecker*, 604 B.R. 360, 366 (Bankr. D. Neb. 2019) (collecting cases).
[43] *Id.* at 367.
[44] *In re Thum*, 329 B.R. 848, 851-53 (Bankr. C.D. Ill. 2005).

property against any and all debt collection mechanisms."[45] On the other hand, the court concluded the wage garnishment statute is much narrower in scope and merely caps the maximum amount to be withheld. "It is only by implication that the [debtor] construes that withholding ceiling as a general exemption for the portion of accrued wages that are nongarnishable."[46]

Similarly, in *In re Parsons*[47], a Missouri bankruptcy court reviewed its garnishment statute, which provides for the:

> maximum part of the aggregate earnings of any individual for any workweek … may not exceed (a) twenty-five percentum, or, (b) the amount by which his aggregate earnings for that week, after the deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage …, or, (c) if the employee is the head of a family and a resident of this state, ten percentum, whichever is less.[48]

The *Parsons* court found that the garnishment statute did not "explicitly identify property that a judgment-debtor can keep away from creditors" but rather "aims to regulate the enforcement of garnishment orders."[49]

As a court in Vermont noted when considering similar garnishment statutes, "[t]aken as a whole, these provisions do not contemplate the process by which assets are assembled into a bankruptcy estate. The exclusive purpose of this statutory scheme is instead to limit the periodic garnishment of future

---

[45] *Id.* at 853.
[46] *Id.*
[47] *In re Parsons*, 437 B.R. 854, 856-57 (Bankr. E.D. Mo. 2010).
[48] Mo. Rev. Stat. § 525.030(2).
[49] *Parsons*, at 856-57.

wages…"[50] This limitation merely "regulate[s] garnishments so that the judgment debtor may still have sufficient resources to support themselves and their family."[51]

### B. Allowing an exemption in wages under Miss. Code Ann. § 85-3-4 would frustrate the effectiveness of bankruptcy and allow the debtor to "double dip" in her protections.

The purpose of exemptions is to allow a debtor to retain enough assets to maintain a standard of living that meets the basic needs of a debtor and her dependents.[52] The Bankruptcy Code has a separate mechanism for establishing that standard of living when it comes to wages, which are, after all, how most chapter 13 plans are funded.[53]

The Bankruptcy Code includes a statutory scheme to balance the debtor-creditor relationship and to offer similar protections to those offered by Miss. Code Ann. § 85-3-4 outside of bankruptcy. "Chapter 13 allows a debtor to retain [her] property if [she] proposes, and gains court confirmation of, a plan to repay [her] debts over a three- to five-year period."[54] Those payments "are usually made from a debtor's 'future earnings or other future income.'"[55] "Accordingly, the Chapter 13 estate from which creditors may be paid includes

---

[50] *In re Riendeau*, 293 B.R. 832, 837 (D. Vt. 2002), aff'd, 336 F.3d 78 (2d Cir. 2003).
[51] *Parsons*, 437 B.R. at 856–57.
[52] *In re Link*, 172 B.R. 707, 711 (Bankr. D. Mass. 1994).
[53] *See, e.g.*, 11 U.S.C. §§ 1306(a)(2), 1325(b).
[54] *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015) (citing 11 U.S.C. §§ 1306(b), 1322, and 1327(b)).
[55] *Id.* (citing § 1322(a)(1); 8 Collier on Bankruptcy ¶ 1322.02 [1] (A. Resnick & H. Sommer eds., 16th ed. 2014)).

14

both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing."[56]

In fact, section 1306(a)(2) specifically delineates "earnings from services performed by the debtor after the commencement of the case..." as property of the estate.[57] Section 1325(b) then requires that the debtor either pay all unsecured claims in full or devote all of her disposable income to the plan. Creditors are paid from the debtor's disposable postpetition income as an alternative to the amount they could collect under a chapter 7 liquidation.[58] For purposes of funding the plan, "disposable income" means:

> 'currently monthly income received by the debtor' less 'amounts reasonably necessary to be expended' for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures. 'Currently monthly income,' in turn, is calculated by averaging the debtor's monthly income during what the parties refer to as the 6–month look-back period, which generally consists of the six full months preceding the filing of the bankruptcy petition.[59]

"For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for 'maintenance or support.'"[60] "In a below median case, 'projected disposable income,' as used in section 1325(b)(1)(B), is

---

[56] *Id.* (citing § 1306(a)).
[57] 11 U.S.C. § 1306(a)(2).
[58] 11 U.S.C. § 1325(a)(4).
[59] *Hamilton v. Lanning*, 560 U.S. 505, 510 (2010) (citations omitted).
[60] *Id.* (citing 11 U.S.C. § 1325(b)(2)(A)(i)). The *Hamilton* Court further explained that for a debtor with income that exceeds the state median, only certain specified expenses are included. The formula for determining disposable income for above-median-income debtors is delineated by section 707(b)(2), known as the "means test," and is reflected in a schedule (Form B122C-2), which a chapter 13 debtor is required to file.

based on a debtor's current income and expenses as reflected on Schedules I and J."[61]

In defining disposable income this way, the Bankruptcy Code permits a debtor to withdraw from her income amounts reasonably necessary for her support—essentially the same protection offered by the Mississippi wage garnishment cap outside of bankruptcy.

Because this debtor's income is below Mississippi's median income for a household of her size, her disposable income is determined by subtracting her actual expenses as listed on Schedule J, as opposed to the standard expenses allowed above-median-income debtors in Form B122C-2.[62] Here, the debtor's schedule I reports average monthly income of $2,655.99.[63] Her schedule J deducts $2,245 of average monthly expenses, which include $498 for utilities, $600 for food and housekeeping supplies, $150 for clothing, laundry and dry cleaning, and $227 for car insurance.[64]

Upon completion of the plan, the debtor will be granted a discharge, at which time she will no longer be liable for those debts to her creditors. Allowing an additional exemption in wages under state law would frustrate federal bankruptcy policy by allowing this chapter 13 debtor to "double dip" in

---

[61] *In re Kibbe*, 342 B.R. 411, 415 (Bankr. D.N.H. 2006).
[62] *In re Patrick*, No. 12-03042-NPO, 2013 WL 168222, at *1, n.3 (Bankr. S.D. Miss. Jan. 16, 2013).
[63] (Dkt. # 12).
[64] *Id.*

16

both state law exemption and federal bankruptcy expense allowances. She would be permitted to exempt the settlement proceeds, which would have been available to pay creditors in the plan, in addition to the amounts withheld from her disposable income under section 1325, and ultimately receive a discharge, all while her unsecured creditors receive nothing.

## IV. CONCLUSION

Most importantly, the plain language of Miss. Code Ann. § 85-3-4 makes clear that it is inapplicable on its face. A review of other Mississippi exemptions and case law from states with similar exemptions further supports that conclusion. From a policy perspective, allowing an exemption in the settlement proceeds for back wages would not comport with the purposes of chapter 13, namely the assembly of assets in a bankruptcy estate, the need for wages to fund a plan, and a discharge upon completion of the plan. Chapter 13 has its own mechanism to serve the same purpose as the claimed exemption. Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED** that the *Objection to Debtor's Claim of Exemptions* is **SUSTAINED** and the Debtor's claim of exemption in the settlement proceeds for back wages is **DISALLOWED**.

##END OF ORDER##